IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| Tyrone Allen, | ) | Civil Action No. 4:11-2466-TLW |
| | ) | Cr. No. 4:02-750 |
| Petitioner, | ) | |
| vs. | ) | ORDER |
| The United States of America, | ) | |
| Respondent. | ) | |

This matter comes before the Court for consideration of the pro se motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255 filed by the Petitioner, Tyrone Allen (hereinafter "Petitioner" or "Defendant").

On July 23, 2002, a federal grand jury returned a multi-count Indictment against Petitioner and a number of co-defendants. (Doc. # 1). On September 30, 2002, Petitioner pled guilty to two counts of using and carrying a firearm, during and in relation to, and possessing a firearm in furtherance of a crime of violence, and aiding and abetting in such conduct, in violation of 18 U.S.C. § 924(c) and 2. On April 24, 2003, Petitioner was sentenced to a total of 350 months imprisonment. Petitioner did not seek a timely direct appeal. However, on November 24, 2003, Petitioner filed a notice of appeal and the Fourth Circuit dismissed the appeal as untimely on November 29, 2004.

Petitioner later sought relief pursuant to 28 U.S.C. § 2255 and in that motion specifically sought the right to appeal. See C.A. No. 4:05-3211. On December 12, 2008, this Court granted Petitioner relief and allowed him to seek a direct appeal. Petitioner was afforded counsel and proceeded with his direct appeal. On June 21, 2010, the Fourth Circuit affirmed his conviction and

1

sentence. The mandate issued on July 9, 2010.

Thereafter, on September 13, 2011, Petitioner, proceeding pro se, filed the current motion under 28 U.S.C. § 2255 asserting three grounds for relief. (Doc. # 203). On October 7, 2011, the Government filed a motion for summary judgment and a supporting memorandum in opposition to Petitioner's petition. (Docs. # 216 & # 217). Pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised by Order filed December 29, 2011 that he had thirty-four days to file any material in opposition to the Government's motion. (Doc. # 222). Petitioner filed a response on February 7, 2011. (Doc. # 224). The matter is now ripe for decision.

## 28 U.S.C. § 2255

Title 28, Section 2255 of the United States Code provides that a prisoner in custody under sentence of a federal court may file a motion in the Court which imposed the sentence to vacate, set aside, or correct the sentence. The statute states four grounds upon which such relief may be claimed: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law, and (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C.A. § 2255. "Generally, 28 U.S.C. § 2255 requires [a] petitioner to prove by a preponderance of the evidence that 'the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law.'" Leano v. United States, 334 F. Supp. 2d 885, 890 (D.S.C. 2004). In Leano, the District Court noted that this is "the proof needed to allege a constitutional error," and that "[t]he scope of review of non-constitutional error is more limited than that of constitutional error; a non-constitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete

miscarriage of justice,' or is 'inconsistent with the rudimentary demands of fair procedure.'" Leano, 334 F. Supp. 2d at 890 (quoting United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999)). In deciding a 28 U.S.C. § 2255 motion, the Court need not hold a hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. The Court has thoroughly reviewed the motions, files, and records in this case, liberally construing Petitioner's pro se motion, and finds that no hearing is necessary.[1]

## STANDARD OF REVIEW

The Government has moved for summary judgment as to all grounds raised by Petitioner. (Doc. # 216). In examining a motion for summary judgment, the Court must determine whether there exists a genuine issue of material fact. Fed. R. Civ. P. 56. Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of genuine issues of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323; see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249. Though this initial responsibility rests with the moving party, when a motion for summary judgment is made and supported as provided in Rule 56, the non-moving party must produce "specific facts showing that there is a genuine issue for trial," rather than resting upon bald assertions contained in the pleadings. See Celotex, 477 U.S. at 324. Thus, the plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden

---

[1] The Court has relied on the record in the case in resolving all issues of ineffective assistance of counsel, as opposed to counsel's affidavit.

of proof at trial. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. Celotex, 477 U.S. at 322-23 (1986).

## DISCUSSION

Petitioner asserts three grounds for relief, all of which are based upon a theory of ineffective assistance counsel. (Doc. # 203). Petitioner's claims set forth verbatim are as follows:

1. Ineffective Assistance of trial counsel. Trial counsel failed to properly advise the Defendant of his substantive due process rights. Counsel failed to properly investigate the underlying conduct and additionally counsel failed to properly, competently, and completely review the discovery materials in the instant case. Counsel allowed the Defendant to enter a plea agreement which was not a benefit to Defendant's penal interests. Trial counsel failed to properly argue and articulate on the record the substance of the motion by the Government at sentencing for a variance or departure. Counsel allowed the Defendant to enter a guilty plea even after the Defendant advised counsel that he was "actually innocent" of some of the alleged conduct. Counsel advised the Defendant that it "did not matter, a gun is a gun" when in fact this decision did substantially affect the Defendant's due process rights.

2. Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea. Counsel advised the Defendant to simply "plead guilty" to avoid the consequences of trial, when in fact the Defendant was actually innocent of a portion of the conduct attributed to him and the exposure of a jury trial was for the most part the same as the exposure which the guilty plea resulted in.

3. Ineffective assistance of appellate counsel. Appellate counsel's performance on the direct appeal was deficient. Counsel failed to properly communicate with the Appellant to determine the underlying issues in the case and further, Counsel failed to articulate and preserve an appellate record, instead opting to file an Anders brief, against the wishes of Appellant.

In order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two things: one, that counsel's performance fell below an objective standard of reasonableness; and two, that counsel's deficiencies prejudiced his defense. Strickland v. Washington, 466 U.S. 668,

4

687-692, 104 S.Ct. 2052, 2063-67 (1984). A defendant asserting an ineffective assistance of counsel claim must satisfy both prongs, and a failure of proof on either prong ends the matter. U.S. v. Roane, 378 F.3d 382, 404 (4th Cir. 2004) (citing Williams v. Kelly, 816 F.2d 939, 946-47 (4th Cir.1987)).

Under the first prong of Strickland, we apply a "strong presumption" that a trial counsel's strategy and tactics fall "within the wide range of reasonable professional assistance." Id. (citing Strickland, 466 U.S. at 689). For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. (citing Strickland at 687). The reasonableness of a lawyer's trial performance must be "evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential." Id. (citing Kimmelman v. Morrison, 477 U.S. 365, 381 (1986); Strickland, 466 U.S. at 689).

In order to establish prejudice under Strickland's second prong, a defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." Id. In the context of a guilty plea, the prejudice prong is satisfied where there "is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). The first inquiry--whether counsel's performance was deficient -- may be by-passed if the claim is more easily disposed on the ground of lack of prejudice. Strickland 466 U.S. at 697.

The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Further, there

is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . .." Id. at 689. As the Strickland Court observed:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

> Id. at 689. (Citations ommitted).

In his first ground for relief, Petitioner alleges his counsel was ineffective in a number of different respects. One set of allegations is that he indicates his counsel failed to explain his substantive due process rights to him. Another set of allegations is that counsel failed to review the discovery and/or investigate Petitioner's case properly. An additional allegation is that counsel allowed the defendant to enter a plea agreement which was not beneficial to Petitioner and that counsel allowed him to enter the plea even after Petitioner advised counsel that he was actually innocent of some of the alleged conduct. Finally, Petitioner argues that counsel was ineffective in that he failed to properly argue and articulate on the record the substance of the motion by the Government at sentencing for a variance or departure.

As to the discovery and investigation issues, the Government asserts that in Petitioner's motion he does not explain how the outcome of his case would have changed if counsel had performed these tasks differently. Specifically, Petitioner's motion is void of what facts or exculpatory evidence defense counsel missed in his case investigation. Additionally, as noted by the Government, Petitioner offers no support for his statement that he is actually innocent of the alleged conduct. Petitioner's own statements at his guilty plea hearing dispute this actual innocence

allegation. Also, Petitioner alleges that his attorney did not properly argue for his downward departure. The Government indicates that it filed the downward departure motion with the Court and that at sentencing both parties articulated reasons for the departure. After careful review and consideration, the Court finds the position of the Government to be sufficiently persuasive. In so concluding the Court finds the following excerpts from Petitioner's Guilty Plea[2] to be relevant:

The Court clearly advised Petitioner of the rights which he was waiving by pleading guilty, and Petitioner indicated that he both understood the rights to which he was entitled, and that he was waiving those rights.

> The Court: Have you had any problem understanding any of the proceedings that you've gone through today and understanding your right to a trial and what you're doing, what you're giving up by pleading guilty? Have you had any problems understanding any of that?
>
> Defendant: At one time, but [my attorney] explained it to me. I understand it.
>
> . . .
>
> The Court: I need to advise you that, in pleading guilty, you are admitting the charges against you, that you are waiving all defenses to the charges and defects in the proceedings, that you are rendering irrelevant many, if not all, claims and violations of your Constitutional rights that may have occurred prior to the entry of the guilty plea and that you are consenting to a binding judgment of conviction and imposition of an appropriate sentence. Do you understand that ....Mr. Tyrone Allen?
>
> Defendant: Yes, sir.
>
> . . .
>
> The Court: Do you understand that you have a right to plead not guilty to any offense charged and persist in that plea, that you then have the right to a trial by jury,

---

[2] With the Defendant's consent, his guilty plea was taken by U.S. Magistrate Judge Thomas E. Rogers, III. (See Doc.# 94).

that at a trial you would be presumed to be innocent and the Government would have to prove your guilt beyond a reasonable doubt, that you would have the right to assistance of counsel for your defense and the right to see and hear all witnesses and have them cross examined in your own defense and the right on your own part to decline to testify or to put up any evidence unless you voluntarily elected to do so and the right to the attendance of witnesses to testify in your own defense and, should you decide not to testify or put up any evidence, that fact cannot be used against you. Do you understand those rights . . .Mr Tyrone Allen?

Defendant: Yes, sir.

. . .

The Court: Do you further understand that, by entering your plea of guilty and if the plea is accepted, there will be no trial and you will have given up your right to a trial as well as those other rights associated with a trial and we've just discussed? Do you understand that ....Mr. Tyrone Allen?

Defendant: Yes, sir.

. . .

The Court: . . .Mr. Hoffmeyer, . . .have you [ ] discussed those rights with your client[ ] and, in your opinion, do[es] [he] understand that [he] [is] waiving or giving up those rights?

Mr. Hoffmeyer: Your Honor, I have discussed those rights with Tyrone Allen, and he understands.

Doc. # 144, pps 8, 25-27.

Additionally, the factual summary which was presented at the guilty plea hearing, to which Petitioner admitted is contrary to Petitioner's current assertions that he was actually innocent of some of the offense conduct. The Assistant United States Attorney provided the following factual summary:

> Ms. Parham: On February 20th, 2002, Lewis Dwayne Evans, John Carmichael, Eric Allen and Tyrone Allen all met at Moseley's residence to discuss robbing a motel and later decided to, instead, rob Bunch's Food Mart. Lewis Dwayne Evans drove the car, Carmichael and Eric Allen and Tyrone Allen robbed the convenience store using a sawed-off shotgun. They took an undisclosed amount of money, which was later determined to be $ 230, according to the defendants, from the store and locked the clerk, Dianne Phillips, in the storage room. Once they left the store, they divided the money between the four of them.
>
> On February 24th, 2002, Eric Allen, Tyrone Allen, Monica Moseley, and Lewis Dwayne Evans and Mr. Carmichael met at Moseley's house and discussed the robbing of the Park and Snack convenience store. The decision was made to distract the clerk by looking for a bottle of Pepto-Bismol.
>
> On February 25, 2002, they used Ms. Moseley's car, a brown Lincoln Town car for transportation. Eric Allen stood outside the car, and Carmichael stood at the front door as a look-out. Tyrone Allen, Lewis Dwayne Evans, Michael Pendergrass and Monica Moseley went inside the store. Michael Pendergrass had the sawed-off shotgun, and Tyrone Allen had a .380 caliber gun.
>
> The clerk said a black male and a black female came into the store, and the female told her she wanted a bottle of Pepto-Bismol. Once the clerk turned around to get it for her, Tyrone Allen jumped over the counter and knocked her to the ground and had a short, black gun in her face, which was the .380 caliber gun, and order[ed] her to give him the money.
>
> At one time, he said, "Give me the rest of it or I'll kill you."
>
> The group robbed the store of an undisclosed amount of money, which was later determined to be $ 250, according to the defendants, and they later divided that money between the five of them.
>
> The Park and Snack convenience store and Bunch's Food Mart are located in Dillon, South Carolina. And at the time of these robberies, they were businesses engaged in interstate commerce. And because they stole money from these businesses, they did affect interstate commerce by these robberies.
>
> And after these robberies, Lewis Dwayne Evans and Mr. Eric Allen and Tyrone Allen and Ms. Mosely all gave statements confessing to the robberies. . . .
>
> Doc. # 144, pps. 31-32.

After that recitation, the Court then queried Mr. Tyrone Allen as follows:

| | |
|---|---|
| The Court: | Mr. Tyrone Allen, do you agree that committed a crime of violence on both occasions? |
| Defendant: | Yes, sir. |
| The Court: | And that, during and in relation to the commission of that crime, you knowingly used, carried or brandished a weapon or aided and abetted someone else in doing so? |
| Defendant: | Yes, sir. |
| Mr. Hoffmeyer: | May I just mention in regard to him. He wanted me to point out to the Court that he did those things, the elements that Your Honor has asked; but with regard to the specific facts, he denies that he hit this woman and he denies telling her that he was going to kill her. But as far as using force, he had the weapon and used force to go about the offense. And the other elements are clearly met. |
| The Court: | Okay. Other than that modification, do you agree with the facts stated by Ms. Parham? |
| Defendant: | Yes, sir. |

. . .

| | |
|---|---|
| The Court: | Are you in fact guilty of these charges...Mr. Tyrone Allen? |
| Defendant: | Yes, sir. |
| The Court: | How do you wish to plead....Mr. Tyrone Allen? |
| Defendant: | Guilty. |

Doc. 144, pps. 35-36, 37.

Finally, as to Petitioner's allegations that trial counsel failed to properly argue for his

downward departure, the Court finds that the record indicates otherwise. The Government initially provided its position with regards to the downward departure motion it filed. Then Defense counsel was given the opportunity to address the Court in regards to the Government's motion.

The Court: Mr. Hoffmeyer – Let me say based on the Government's recommendation, I will grant the motion for downward departure in regard to each individual defendant in this case. At this time, Mr. Hoffmeyer, I'll be happy to hear anything you'd like to say on behalf of your client in regard to the Downward Departure or in regard to the appropriate sentence that should be imposed in this case.

Mr. Hoffmeyer: Thank you, your Honor. As Ms. Parham has indicated, immediately upon the arrest of my client and his brother as well, they were in the car at the same time. He began cooperating, and in fact, on March 4, they were arrested on February 28, on March 4 he gave three separate statements, all of them consistent, all of the inculpating himself and the co-defendants in this case. One statement was given about 2:30, regarding one of the particular robberies and another at 2:48, a different sheet of paper involving the other robbery, then they came back at six o'clock to him and he told them further about other criminal activity and other things he knew related to those robberies.

Judge, those were handwritten statements, he signed each statement, initialed each page, without a lawyer being present, without the thought of a federal prosecution coming. They were state charges, but without a lawyer telling him we needed a downward departure down the road. He was already assisting authorities in solving this crime and leading to the co-defendants.

Judge, as you are aware, Ms. Mosely has pled, the juvenile, it's my understanding, has pled and actually sentenced in state court, who was also involved, and of course, to a certain extent these three defendants in cooperating early, have all backed each other up as far as the corroboration of what happened, but similarly, it's led to each other entering pleas in this case.

Judge, as far as the trial of the case, as Ms. Parham pointed out to the Court, these defendants, my defendant willingly testified, and in our view, it's unfortunate the Jury came back the way they did, as we know Your Honor won't allow it to, but are concerned that that might affect the weight you give help that the Defendant gave. I know Your Honor understands the way juries work.

The Court: Let me just say that will have no effect with me. The question of what the

11

> jury does is up to the Jury to decide. But I evaluate the substantial assistance in this case based on what these Defendants chose to do when presented with the opportunity, and the Jury's verdict in that case has no impact at all, it will not be held against these Defendants as all.
>
> Mr. Hoffmeyer: Thank you, Judge. I have told him that. Judge, as far as what the testimony or the testimony that my client provided, as Ms. Parham has indicated, my client and his brother passed polygraphs with respect to their testimony after the trial of the case. I think there will be a further departure down the road, but I think the substantial assistance has been very substantial.
>
> Judge, there's no doubt these cases are very serious. My client and I believe his brother as well, as the court is aware, face 35 years in prison on these charges. Sometimes, I think it would be easy for the Defendant to think in terms of what do I have to lose. I'm a young man, what do I have to lose, I might as well go to trial when I'm pleading to what is 35 years.
>
> He understood he could help himself but he also understood he was responsible for what he did. That is why he chose to talk to law enforcement as early on as he did. So Judge, it's a situation where he didn't want to put the victim, the Government or anybody else through the process of this trial, but admit his guilt and help the Government to the extent he could.
>
> Doc. # 154, pps. 18-21.

The Court finds that contrary to Petitioner's allegations, defense counsel argued persuasively on Defendant's behalf as to the Government's Downward Departure. The Court ultimately granted a 70 month departure in Defendant's case.

This Court has carefully considered each of Petitioner's claims for relief as asserted in Ground One of his Petition. This Court is not sufficiently persuaded that Petitioner has satisfied either prong in relation to any of his asserted grounds for relief. In each instance Petitioner has made an assertion that counsel has failed to do something that Petitioner feels he should have done, but he has not shown that counsel's performance fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.

As to Petitioner's second ground for relief, Petitioner initially asserts that his plea was not

12

made voluntarily or with an understanding of the nature of the charge and consequences of the plea. Again, the record contradicts this assertion by Petitioner. The Government summarized the plea agreement at the guilty plea hearing. The Court then inquired as follows:

> The Court: Mr. Tyrone Allen, was that an accurate summary of the plea agreement that you've entered into with the Government?
>
> Defendant: Yes, Sir.
>
> The Court: Did you have the opportunity to actually read and discuss the agreement with your attorney before you signed it?
>
> Defendant: Yes, Sir.
>
> The Court: And did you understand the terms of the agreement?
>
> Defendant: Yes, Sir.
>
> The Court: Does it represent the entire agreement that you have with the Government?
>
> Defendant: Yes, Sir.
>
> The Court: Are there any other agreements?
>
> Defendant: No, Sir.
>
> The Court: Has anyone made any other or different promise or assurance to you of any kind to induce you to plead guilty in this case?
>
> Defendant: No, Sir.
>
> . . . .
>
> The Court: Has anyone attempted in any way to force you to plead guilty in this case...Mr. Tyrone Allen?
>
> Defendant: No, Sir.

. . . .

    The Court:    Are you pleading guilty on your own free-will . . . Mr. Tyrone Allen?

    Defendant:    Yes, Sir.

Doc. # 144, pps 16,18.

Furthermore, the Court advised defendant that he was pleading guilty to a felony offense, and that an adjudication of guilt on such an offense may deprive him of certain civil rights. Id at 18. The elements of the offenses as well as the penalties for the counts to which Defendant pled were placed on the record, and he indicated that he understood the same. Id. at 19-21, 28-29. The court specifically asked Petitioner:

    The Court:    Having said all of that, do you understand the possible consequences of your plea.... Mr. Tyrone Allen?

    Defendant:    Yes, Sir.

Id. at 23.

The transcript of Defendant's Rule 11 plea colloquy indicates that his plea was voluntarily made, with an understanding of the nature of the charge and consequences of the plea. Accordingly, the Court finds any claim to the contrary to be without merit.

    Petitioner next alleges that counsel was ineffective for advising him to enter a guilty plea even though he was "actually innocent of a portion of the conduct attributed to him." Again, Petitioner has failed to develop this actual innocence claim and as discussed in detail, supra, the factual summary which was presented at the guilty plea hearing, to which Petitioner admitted, is contrary to Petitioner's current assertions that he was actually innocent of some of the offense conduct. The Court concludes that this claim is without sufficient legal merit.

14

Petitioner also asserts that his sentencing exposure after a jury trial would have been essentially the same as his guilty plea sentence. This is incorrect. Convictions under 18 U.S.C. § 924(c) must run consecutive to any other sentence imposed. Thus, his possible 420 month sentence (prior to any departure) for counts 2 and 4 would have been consecutive to any sentences for any potential convictions on counts 1, 3, and 6. If Petitioner had proceeded to trial, he could have faced a higher sentence. Also, it bears noting that it is improbable that Petitioner would have received a downward departure if he had proceeded to trial. In sum, the Court cannot conclude that defense counsel's performance in advising Petitioner to accept the Government's plea offer fell below an objective standard of reasonableness, much less that any deficiency in counsel's representation resulted in prejudice to Petitioner.

Finally, as to Petitioner's third ground for relief, Petitioner alleges that his appellate counsel was ineffective and that he was prejudiced because his appellate counsel filed an Anders brief against his wishes. The Court does not find this position to be sufficiently persuasive.

The Court notes that a criminal defendant's right to effective assistance of counsel continues through a direct appeal. See Evitts v. Lucey, 469 U.S. 387 (1985). The Strickland test stated above applies equally to claims of ineffective assistance of appellate counsel, i.e., a petitioner must show error and prejudice. In applying Strickland to claims of ineffective assistance of appellate counsel, this court accords appellate counsel the "presumption that [he] decided which issues were most likely to afford relief on appeal." U.S. v. Holmes, 2012 WL 1952286 (D.S.C. 2012) (quoting Pruett v. Thompson, 996 F.2d 1560, 1568 (4th Cir.1993)). Appellate counsel is not obligated to assert all nonfrivolous issues on appeal; there is hardly any question about the importance of examining the record and having appellate counsel select the most promising issues for review. Jones v. Barnes, 463 U.S. 745, 752 (1983); see also Smith v. South Carolina, 882 F.2d 895, 899 (4th Cir.1989).

15

"'Winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from evidence of incompetence, is the hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986) (quoting Jones, 463 U.S. at 751). See also Smith v. South Carolina, 882 F.2d at 899 (counsel's failure to raise a weak constitutional claim may constitute an acceptable strategic decision designed "to avoid diverting the appellate court's attention from what [counsel] felt were stronger claims"). Although it is possible to bring a successful ineffective assistance of appellate counsel claim based on failure to raise a particular issue on direct appeal, the Supreme Court has reiterated that it is "difficult to demonstrate that counsel was incompetent." Smith v. Robbins, 528 U.S. 259, 288 (2000). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome " Gray v. Greer, 800 F.2d 644 (7th Cir. 1985). To establish prejudice relating to the actions of appellate counsel, Defendant must establish a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. See Smith v. Robbins, 528 U.S. at 285–86.

In this case, the petitioner has not specifically asserted any grounds that appellate counsel should have raised on his behalf on appeal. Counsel prepared an Anders brief in this case. As an initial matter, the Court notes that the Fourth Circuit independently reviews the judgment and sentence when an Anders brief is filed. The Fourth Circuit did so in this case and found no errors. See United States v. Allen, 09-4033, (4th Cir. June 17, 2010) ("In accordance with Anders, we have reviewed the entire record in this case and have found no meritorious issues for appeal"). Additionally, when an Anders brief is filed, the defendant is afforded the opportunity to file an additional brief with the Fourth Circuit outlining any additional matters for redress. Petitioner filed a pro se supplemental brief in which he claims "he was unaware that he was pleading guilty as an

aider and abettor and that he is actually innocent of brandishing a shotgun during and in relation to a crime of violence." Id. The Fourth Circuit reviewed the record and the plea colloquy and found that Petitioner's guilty plea to the two charges was knowing and voluntary and there was no constructive amendment to the indictment. Id. Further the Court found that the record clearly shows that Petitioner was aware he was pleading guilty to the two charges as an aider and abettor. Id. On this record, this Court cannot conclude that appellate counsel's performance fell below an objective standard of reasonableness. In addition, the petitioner has not met his burden of showing that appellate counsel's performance prejudiced the result of his appeal, particularly in light of the Fourth Circuit's ruling following full review of the record in this case. The Court concludes that the petitioner has failed to meet his two-pronged burden under Strickland with regard to this claim.

## CONCLUSION

For the foregoing reasons, Petitioner's motion for relief pursuant to 28 U.S.C. § 2255 is **DENIED** (Doc. # 203) and the Government's motion for summary judgment is **GRANTED** (Doc. # 216). This action is hereby **DISMISSED**.

The Court has reviewed this petition in accordance with Rule 11 of the Rules Governing Section 2255 Proceedings. The Court concludes that it is not appropriate to issue a certificate of appealability as to the issues raised herein. Petitioner is advised that he may seek a certificate from the Fourth Circuit Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.

**IT IS SO ORDERED**.  s/Terry L. Wooten
TERRY L. WOOTEN
August 27, 2012  United States District Judge
Florence, SC