IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

Tyrone Allen

v.

United States of America

Crim. No. 4:02-cr-00750-TLW-1

**ORDER**

This matter comes before the Court on Defendant Tyrone Allen's *pro se* motion for a sentence reduction under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). ECF No. 288. For the reasons below, his motion is denied.

## PROCEDURAL BACKGROUND

In February 2002, Allen and his codefendants committed two violent armed robberies of convenience stores in Dillon, South Carolina. *See generally* Presentence Investigation Report ("PSR"), ECF No. 282. During each of these robberies, Allen and his codefendants brandished firearms and threatened to kill store clerks. In the resulting Indictment, Allen was charged with two counts of using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), two counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951(b)(1), and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and § 924(a). ECF No. 1.

On September 30, 2002, Allen pled guilty to Counts 2 and 4 of the Indictment, both of which charged him with using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c). ECF No. 97. The firearm at issue in both Counts was a sawed-off shot gun. *Id.* In exchange for his plea, the

Government agreed to dismiss three of the five counts. ECF No. 91. Specifically, and notably, the Government agreed to dismiss Counts 1 and 4, charging Allen with two Hobbs Act robbery offenses, and Count 6, charging him with being a felon in possession. *Id.*

At the time of sentencing, Allen faced a statutory mandatory minimum of 420 months as to these counts. However, pursuant to Allen's plea agreement, the Government moved for a downward departure pursuant to U.S.S.G. § 5K1.1. ECF No. 123. At sentencing, the Court granted the Government's motion and sentenced Allen to a total of 350 months incarceration, consisting of 120 months on Count 2 and 230 months on Count 4, said sentences to run consecutively. ECF Nos. 123 & 128. Allen appealed his sentence, and the United States Court of Appeals for the Fourth Circuit dismissed his appeal as untimely. ECF Nos. 140, 159 & 160.

Allen filed the present motion for compassionate release on April 10, 2023. ECF No. 288. The Government opposes Allen's motion, and Allen has replied to the Government's opposition. ECF Nos. 290 & 295. Accordingly, this matter is ripe for review, adjudication, and disposition.

## <u>APPLICABLE LAW</u>

Without certain exceptions, a court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). One of those exceptions is the compassionate release statute. That statute provides:

> [T]he court, . . . upon motion of the defendant . . . , may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) . . . , if it finds that—(i) extraordinary and compelling reasons warrant such a reduction; . . . and that such a reduction is

consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A). "A defendant who seeks compassionate release under § 3582(c)(1)(A)(i) has the burden of establishing that such relief is warranted." *United States v. Edwards*, 451 F. Supp. 3d 562, 565 (W.D. Va. 2020).

The Sentencing Commission has issued a policy statement addressing compassionate release motions—§ 1B1.13. But before the passage of the First Step Act, compassionate release motions could be filed only by the Bureau of Prisons ("BOP"), so § 1B1.13 by its terms only applies to BOP motions. *See United States v. McCoy*, 981 F.3d 271, 275–76 (4th Cir. 2020) (explaining the First Step Act's changes to the compassionate release statute). There is no corresponding policy statement addressing compassionate release motions filed by inmates. Thus, in *McCoy*, the Fourth Circuit held that, when considering an inmate's compassionate release motion, § 1B1.13 is not an "applicable policy statement[]." *Id.* at 284. But while § 1B1.13 may not directly apply to an inmate's motion, "it remains helpful guidance." *Id.* at 282 n. 7.

While § 1B1.13 may provide guidance, it is not an "applicable policy statement[]," so "district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'" *McCoy*, 981 F.3d at 284 (quoting *United States v. Zullo*, 976 F.3d 228, 230 (2d. Cir. 2020)) (emphasis in original); *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). Ultimately, the determination of whether a case presents extraordinary and

compelling reasons warranting a sentence reduction is a reduction is a question first determined within the sound discretion of the district court.

## DISCUSSION

To provide context to both Allen's motion and the Court's decision, the Court will first review the offense conduct establishing Allen's present incarceration before reviewing the parties' arguments and conducting its own analysis of the issues at play.

### I.    THE OFFENSE CONDUCT

This case involves two violent armed robberies committed by Allen and several codefendants in February 2002. Both robberies were of convenience stores in Dillion, South Carolina. Each robbery involved Allen and his codefendants threatening to kill victims with firearms. The offense conduct is set forth in detail in paragraphs 10–16 of the PSR filed in this case. That conduct will be outlined here.

On February 20, 2002, Allen and three of his codefendants, one of whom was a juvenile, met at one of the codefendant's residences to discuss robbing Butch's Food Mart. PSR ¶ 12. Once they formulated a plan, the group departed to rob the store. *Id.*

When they arrived, Allen and two of his codefendants donned black masks, while the other waited in the car to serve as both the getaway driver and a lookout. *Id.* Allen and his codefendants then entered the store with a sawed-off shotgun and demanded money from the store clerk. *Id.* ¶ 11. After taking money from the store, the robbers locked the clerk in the store's storage room and warned him not to

trigger the store's alarm.[1] *Id.* According to the clerk, the three robbers advised him "they would blow [him] away if [he] pushed the button." *Id.* After locking the clerk in the storage room, the three robbers departed in their waiting getaway car. *Id.* ¶ 12.

Six days later, Allen, along with four other codefendants, one of whom was a juvenile, met at one of the codefendant's residences to plan a second robbery. *Id.* ¶ 13. The group discussed robbing the Pak & Snak store next. *Id.* When one of the codefendants started to get cold feet about robbing the store, Allen told her that all she needed to do was serve as a decoy by going inside and asking the store clerk for Pepto Bismol so the others could enter and rob the store while the clerk retrieved the item. *Id.* With this plan agreed to, Allen and his codefendants split up. *Id.* ¶ 13. The decoy codefendant departed for the Pak & Snak in her own vehicle, a brown Lincoln, while Allen and three other codefendants followed in a van, which was stolen the day before. *Id.*

When they arrived, one of the codefendants waited in the brown Lincoln as the group's getaway driver. *Id.* Another waited by the front door as a lookout. *Id.* With his crew in place, Allen, another codefendant, and the decoy entered the store together. *Id.* Allen and his codefendant were armed with a .380-caliber pistol and the sawed-off shotgun used during the first robbery. *Id.* As planned, the decoy approached the store clerk and asked for some Pepto Bismol, which was located behind the counter. *Id.* Once the clerk turned around, Allen jumped over the

---

[1] To protect the clerk's identity, the PSR refers to clerk as him/her. For the purposes of this order, the Court will refer to the store clerk as him.

counter, knocked the clerk on the ground, and demanded money. *Id.* The clerk was threatened by Allen who demanded the clerk "give me the rest or I'll kill you." *Id.* Ultimately, Allen and his codefendants robbed the store of approximately $250.00, which they later divided among themselves. *Id.*

Two days later, officers with the local police department in Latta, South Carolina, pulled over the brown Lincoln for driving on the wrong side of the road. *Id.* ¶ 14. One of Allen's codefendants was driving the Lincoln, Allen was in the passenger seat, and the juvenile codefendant was in the rear seat. *Id.* After checking the driver's license, officers arrested him for violation of his beginner's permit. *Id.* The officers then asked Allen and the juvenile codefendant if there were any weapons or illegal contraband in the vehicle. *Id.* Allen told them he had a gun in his seat and reached to grab it. *Id.* Officers told Allen to drop the gun, which he did. *Id.* This gun turned out to be the .380-caliber pistol from the second robbery. *Id.*

During a subsequent search of the Lincoln, officers found the sawed-off shotgun used during the first and second robberies under the driver's seat. *Id.* They also found an additional magazine for the .380-caliber pistol under Allen's seat. *Id.* When questioned, the juvenile codefendant informed the officers the guns belonged to Allen and the driver. *Id.*

As noted, Allen was named in a six-count Indictment arising out of this conduct. ECF No. 1. He was named in five of the Indictment's six counts. *Id.* Ultimately, he pled guilty to the two counts charging him with violations of § 924(c). ECF No. 97. In exchange for his plea, the Government agreed to drop serious

charges against him, specifically, Counts 1 and 4, charging Allen with Hobbs Act robbery, and Count 6, charging him with being a felon in possession.

## II.    THE PARTIES' ARGUMENTS

Before addressing the merits of Allen's motion for compassionate release, the Court will first review the arguments asserted by both Allen and the Government. *See* ECF Nos. 248 & 252.

### A.    *Allen's Arguments in Support of His Motion*

Allen requests that the Court grant his motion for compassionate release because he can establish "extraordinary and compelling" reasons in favor of his release as required by § 3582. ECF No. 295. Specifically, Allen asserts five grounds purportedly constituting "extraordinary and compelling reasons." *Id.* They are (1) his belief that his "youth at the time of the commission of his offense is extraordinary," (2) his contention that "the pandemic induced lockdowns which was [sic] unaccounted for at his original sentencing have made his incarceration harsher than normal and constitutes extraordinary grounds for a sentence reduction," (3) his assertion that he has been successfully rehabilitated, (4) the risk posed by the COVID-19 pandemic when coupled with his asserted medical conditions, and (5) his argument that "recent changes in the law supports [Allen's] position that § 924(c) ["stacked" sentences] constitutes extraordinary and compelling reasons under § 3582." *Id.* at 4–8.

### B.    *The Government's Opposition*

The Government opposes Allen's motion on two independent grounds. ECF

No. 290. First, the Government asserts that Allen cannot establish "extraordinary and compelling reasons" because he fails to meet the heightened standard required by § 3582(c)(1)(A)(i) [.]" *Id.* at 6. Second, and alternatively, the Government argues that even if Allen could meet the "extraordinary and compelling reason" standard the 18 U.S.C. § 3553(a) sentencing factors weigh against a reduction in his sentence. *Id.* "In particular," the Government notes Allen's "extensive prior criminal history, his disciplinary record in the Bureau of Prisons, and the underlying facts of his crimes do not support granting his request for compassionate release." *Id.*

## III.   THE COURT'S REVIEW

Allen has satisfied the administrative exhaustion requirement because 30 days have passed since he filed a request for compassionate release with the warden of his detention facility. ECF No. 288 at 2. Therefore, the Court must determine (1) whether Allen has stablished the existence of "extraordinary and compelling reasons" for a sentence reduction under § 3582(c)(1)(A), and (2) if so, whether granting compassionate release is consistent with the sentencing factors set forth in § 3553(a).

### A.   *The "Extraordinary and Compelling Reasons" Standard*

In reviewing Allen's five grounds for relief, the Court finds that four are proper for consideration as "extraordinary and compelling reasons." The Court concludes three of those grounds are not "extraordinary and compelling reasons" for relief. Even if they were "extraordinary and compelling reasons," no relief is warranted. The remaining argument related to his age is more appropriate to

consider when evaluating the § 3553(a) factors.

Accordingly, when evaluating the "extraordinary and compelling reasons" standard, the Court will only address Allen's claims related to (1) the conditions of his confinement, (2) his assertion that he has been successfully rehabilitated, (3) the risk presented to him by the COVID-19 pandemic, and (4) the fact that he is serving "stacked" § 924(c) sentences. Allen's argument that his age at the time of the instant offenses constitutes an "extraordinary and compelling reason" will be addressed in detail during the Court's review of the § 3553(a) factors.

> i.    *The impact of the COVID-19 pandemic on the conditions of Allen's confinement is not an "extraordinary and compelling reason" in this case.*

In his § 3582 motion, Allen asserts "that the pandemic induced lockdowns which was [sic] unaccounted for at his original sentencing have [sic] made his incarceration harsher than normal and constitutes extraordinary grounds for a sentence reduction." ECF No. 288 at 6–7. In support of this, Allen explains that, because of the COVID-19 pandemic, he "was on [an] extreme and onerous lockdown [.]" *Id.* at 7. In reviewing this argument, the Court concludes that Allen's "argument about his conditions of confinement does not establish a stand-alone reason for compassionate release." *United States v. Hall*, No. CR JKB-04-0323, 2022 WL 2105975, at *3 (D. Md. June 10, 2022).

"Generally, 'harsh conditions of imprisonment occasioned by the COVID-19 pandemic are not, without more, sufficiently extraordinary and compelling to warrant compassionate release.'" *United States v. Hudson*, No. CR ELH-19-173,

2023 WL 3340066, at *8 (D. Md. May 10, 2023) (quoting *Hall*, 2022 WL 2105975, at *3); *see also United States v. Rios-Villanueva*, No. CR 5:11-21-JFA, 2023 WL 186804, at *5 (D.S.C. Jan. 13, 2023) ("[T]he court concludes that the defendant's reliance upon the threat of the COVID-19 pandemic, coupled with his complaints regarding the conditions of his confinement, fails to demonstrate extraordinary and compelling reasons for his release."). To establish "extraordinary and compelling reasons" on a condition of confinement claim based on the impact of the COVID-19 pandemic, a defendant is required to proffer "a confluence of circumstances unique to her case—and beyond just the harsh conditions of incarceration occasioned by the pandemic to justify compassionate release." *United States v. Hatcher*, No. 18 CR. 454-10 (KPF), 2021 WL 1535310, at *4 (S.D.N.Y. Apr. 19, 2021) (granting compassionate release based on a COVID-19 conditions of confinement claim because the defendant outlined how the "harsh conditions of incarceration occasioned by the pandemic" uniquely impacted her case). Here, Allen's motion only discusses how the COVID-19 pandemic has led to lockdowns at the BOP. He has not proffered "a confluence of circumstances unique to [his] case—and beyond just the harsh conditions of incarceration occasioned by the pandemic." *See Hall*, 2022 WL 2105975, at * 3 ("Here, Hall argues that the COVID-19 pandemic and the 'persistent lockdowns and ongoing isolation from inmates and staff' have rendered his 'current incarceration . . . significantly more punitive and significantly less rehabilitative and familial' . . . While these challenges certainly warrant consideration, they do not, without more, establish extraordinary and compelling

reasons for compassionate release."). Accordingly, the Court concludes that Allen does not establish "extraordinary and compelling reasons" based on the impact of COVID-19 on the conditions of his confinement. However, if the impact of COVID-19 is an "extraordinary and compelling reason" for relief, based on the reasons set forth in this order, no reduction of Allen's sentence is warranted.

ii. *Allen's rehabilitation alone does not provide an "extraordinary and compelling reason" warranting a reduction in his sentence.*

Allen's next argument in support of compassionate release asserts that his purported rehabilitation provides a basis for establishing "extraordinary and compelling reasons." ECF No. 288 at 7–8. Specifically, Allen states that he "has dedicated himself to rehabilitation, participating in several rehabilitative classes and programs which he hopes to put to good use as a productive and law-abiding citizen." *Id.* at 7. While appropriate for considering a § 3582 claim, the Court concludes that rehabilitation alone is not a basis for establishing "extraordinary and compelling reasons" warranting a reduction an inmate's sentence or his release. *See* 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."). That said, the Court will consider Allen's efforts at rehabilitation when weighing the § 3553(a) sentencing factors. Further, even if Allen's rehabilitation was an "extraordinary and compelling reason" for relief, based on the reasons set forth in this order, no reduction of Allen's sentence is warranted.

### iii. _The threat of COVID-19 does not present an "extraordinary and compelling reason" warranting a reduction in Allen's sentence._

Allen asserts that he can meet the "extraordinary and compelling reasons standard" because of the threat presented by the COVID-19 pandemic when coupled with his asserted medical risks, specifically, high blood pressure and stage 3 kidney disease. ECF No. 288 at 8. After reviewing the parties' arguments and the record before it, the Court finds that Allen has not shown that the COVID-19 pandemic presents an "extraordinary and compelling reason" warranting the reduction of his sentence.

"The COVID-19 pandemic, which poses a general threat to every non-immune person in the country, does not alone provide a basis for a sentence reduction." _United States v. Walker_, No. 3:20-CR-107-MOC-3, 2022 WL 1462270, at *3 (W.D.N.C. May 9, 2022); _United States v. Raia_, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). This holds especially true following the introduction of several effective COVID-19 vaccines. Although the Fourth Circuit has so far not established a _per se_ rule that the availability of the COVID-19 vaccine precludes compassionate release, courts in this district have held that, "[f]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." _United States v. Henry_, No. CR 3:17-00640-MGL-4, 2022

WL 16541161, at *2 (D.S.C. Oct. 28, 2022) (quoting *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021)) (internal quotations omitted); *United States v. Wolfe*, No. 6:18-CR-00582-DCC-1, 2022 WL 1204840, at *5 (D.S.C. Apr. 21, 2022); *United States v. Raap*, No. 8:18-CR-00678-DCC-1, 2021 WL 2328048, at *3 (D.S.C. June 8, 2021). Accordingly, "[f]ollowing full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced so that an inmate largely faces the same risk from COVID-19 as those who are not incarcerated." *United States v. McBride*, No. 2:09-CR-01223-DCN-1, 2023 WL 207330, at *3 (D.S.C. Jan. 17, 2023) (citations omitted). Based on this authority, the Court concludes that the risk of COVID-19 alone no longer provides a strong, persuasive basis for Allen to establish "extraordinary and compelling reasons" pursuant to § 3582.

This conclusion is bolstered by Allen's refusal to be vaccinated against COVID-19. Allen was offered the Pfizer-BioNTech vaccine on May 7, 2021, and refused it. ECF No. 294 at 80. Allen has not provided the Court with any evidence suggesting that he has a legitimate medical justification for refusing the vaccine, yet he simultaneously argues that, when factoring his asserted medical conditions, he "is in the high-risk category and also in a high-risk of becoming seriously ill from covid." ECF No. 288 at 8. "While it is true that a petitioner who declines a COVID-19 vaccine is 'within his rights to refuse any treatment he wishes to forego, he cannot simultaneously claim that he must be released because of the risk of complications while refusing a vaccine that could virtually eliminate that

risk.'" *United States v. Gibbs*, No. 2:19-CR-0348-DCN-1, 2021 WL 3419441, at *2 (D.S.C. Aug. 5, 2021) *aff'd*, No. 21-7214, 2022 WL 605637 (4th Cir. Mar. 1, 2022). As noted above, courts in this district have found that COVID-19 no longer provides an "extraordinary and compelling reason" to warrant relief given the availability of multiple, effective COVID-19 vaccines. *See supra*; *see also United States v. Lemons*, 15 F.4th 747, 749 (6th Cir. 2021); *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release.").[2] The Court is persuaded by the weight of this authority. Allen's refusal of an effective vaccine against COVID-19 supports the Court's conclusion that COVID-19 does not present an "extraordinary and compelling reason" warranting a reduction in Allen's sentence.[3] Furthermore, Allen has not asserted that his medical conditions are being left untreated by the BOP, which is more than capable of providing him

---

[2] Other Courts within this circuit have done the same. *See, e.g.*, *United States v. Swindler*, No. 7:18-CR-00768-DCC-1, 2021 WL 2374231, at *3 (D.S.C. June 10, 2021), *aff'd*, No. 21-7007, 2022 WL 205683 (4th Cir. Jan. 24, 2022) ("The undersigned agrees with the great weight of authority that Mr. Cunningham's voluntary refusal of a safe and effective vaccine must be considered as a factor in determining whether extraordinary and compelling reasons warrant his release"); *United States v. Jacobs*, 2021 U.S. Dist. LEXIS 92819, at *2 (W.D.N.C. May 17, 2021) (denying compassionate release where defendant refused COVID-19 vaccine and noting that "Defendant's own behavior [in refusing vaccination] is inconsistent with his position that he believes he is at increased risk from the virus").

[3] Although the Court respects Allen's right to refuse vaccination, it cannot ignore the inconsistency of petitioning for compassionate release based on the risk of contracting COVID-19 while also refusing a highly effective medical intervention to reduce that risk. "In short, [a defendant] may not manufacture his own 'extraordinary and compelling' circumstance." *United States v. Griffin*, No. 4:18-CR-00089-DCC-1, 2021 WL 4411773, at *3 (D.S.C. Sept. 27, 2021) (citing *United States v. Greenlaw*, 2021 WL 1277958, at *7 (D. Me. Apr. 6, 2021) ("To reward [the defendant] for his vaccination refusal would create a perverse incentive for defendants like [him] to refuse COVID-19 vaccines and put their lives and the lives of others in jeopardy in an effort to bolster their compassionate release motions.")).

effective medical care. However, even if the threat presented by COVID-19 was an "extraordinary and compelling reason" for relief, based on the reasons set forth in this order, no reduction of Allen's sentence is warranted.

iv.    *The First Step Act's abolition of the "stacking" of § 924(c) sentences constitutes an "extraordinary and compelling reason."*

The Court next considers Allen's argument that he is entitled to compassionate release because of his "stacked" 924(c) convictions. ECF No. 288 at 1. When Allen was sentenced in 2003, federal prosecutors could "stack" multiple violations of § 924(c) for sentencing because a first and "second or subsequent" offense could be charged at the same time. Thus, a defendant, like Allen, who was charged with two counts of using a firearm in violations of § 924(c), could face a 120-month mandatory minimum as to the first violation and a 300-month mandatory minimum as to the second violation, said sentences to run consecutively, for a total of 420 months or 35 years.

Years after Allen was sentenced, in the First Step Act of 2018, Congress modified § 924(c) such that the 25-year mandatory minimum penalty now applies to "a second or subsequent" § 924(c) conviction only if the prior § 924(c) conviction already "has become final." Pub. L. No. 115-391, § 403(a), 132 Stat. 5194, 5222. The Fourth Circuit has since held that district courts can consider the First Step Act's changes to the "stacking" of § 924(c) sentences when evaluating a defendant's motion pursuant to the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A)(i). *United States v. McCoy*, 981 F.3d 271, 285–86 (4th Cir. 2020). The Fourth Circuit recently noted in *United States v. Brown* that "Congress did not make this change

to § 924(c) retroactive [but concludes] § 3582(c)(1)(A) allow for 'individual relief'
based on a § 924(c) sentencing disparity 'in the most grievous cases." ____F.4th____,
2023 WL 5257673 at *7 (4th Cir. Aug. 16, 2023).[4] The Court will consider Allen's
request for relief as provided by the Fourth Circuit in *McCoy* and *Brown*.

Turning to Allen's argument that these changes constitute an "extraordinary
and compelling reason" for a reduction in his sentence, the Court acknowledges the
First Step Act's prospective elimination of the "stacking" of sentences under to
§ 924(c). As a result, if Allen pled to the same two charges today, he would be
subject to a lower mandatory minimum sentence on the second § 924(c) count and a
lower overall sentencing range. As noted, Congress did not make the First Step
Act's § 924(c) change retroactive.[5] *See* § 403(b), 132 Stat. at 5222 ("This section, and
the amendments made by this section, shall apply to any offense that was
committed before the date of enactment of this Act, *if a sentence for the offense has*

---

[4] The Court has carefully reviewed the Fourth Circuit's recent published opinion in United States v.
Brown, ____F.4th____, 2023 WL 5257673 at *1 (4th Cir. Aug. 16, 2023). In that case, the defendant,
Kelvin Brown, was charged with eight drug and firearm charges, including two counts of possessing
a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c). *Id.* Brown went to trial, and
a jury convicted him on seven of eight counts—including the two § 924(c) charges. *Id.* Brown received
a total sentence of approximately 57 years, 30 of which were for his two "stacked" § 924(c)
convictions. *Id.* In 2020, Brown moved for compassionate release arguing, in part, that the First Step
Act's changes to the "stacking" of § 924(c) convictions constituted an "extraordinary and compelling
reason" in favor of relief because of the disparity in the sentence he received and the one he would
receive today. *Id.* at * 2. The district court denied the motion, concluding that Brown could not
establish "extraordinary and compelling reasons" and because the 18 U.S.C. § 3553(a) sentencing
factors weighed against granting Brown relief. *Id.* On appeal, the Fourth Circuit reversed the district
court, vacated its order, and remanded the case with instructions to reduce Brown's sentence by 20
years. *Id.* In doing so, the Fourth Circuit majority concluded that, because of the First Step Act's
changes to § 924(c), the disparity between the sentence Brown received and the one he would receive
today constituted an "extraordinary and compelling reasons." *Id.* After concluding that Brown
established "extraordinary and compelling reasons," the Brown majority proceeded to independently
reweigh the § 3553(a) sentencing factors, finding that they supported a reduction in Brown's
sentence. *Id.* Specifically, the majority noted that Brown had made rehabilitative efforts, received
only one disciplinary infraction, and was serving a sentence based on nonviolent conduct. *Id.*
[5] Nevertheless, the Court recognizes that this change must still be considered when evaluating a
motion for compassionate release. *See McCoy*, 981 F.3d at 284.

*not been imposed as of such date of enactment.*") (emphasis added). However, a district court is not required to impose the minimum sentence on § 924(c) counts. Each of these charges carry a statutory maximum of life.

Although the First Step Act's change to the "stacking" of § 924(c) sentences "can constitute an extraordinary and compelling reason for relief," the Fourth Circuit recognized that "not *all* defendants convicted under § 924(c) should receive new sentences." *McCoy*, 981 F.3d at 285, 287 (emphasis added). Deciding whether a particular defendant's sentence should be reduced is ultimately an individualized, case-by-case inquiry. *See id.* at 287–88. In light of *McCoy* and *Brown*, the Court concludes Allen's position is "relevant to . . . the 'extraordinary and compelling reasons' inquiry [.]" *Brown*, 2023 WL 5257673 at *7. However, the question of a sentence reduction here is based—and focused on—a review of the criminal conduct committed, Allen's criminal history, relevant § 3582(c) issues raised in the briefing, applicable caselaw, the 18 U.S.C. § 3553(a) sentencing factors, and changes in the law.

### B.     *The Court's review of the § 3553(a) factors*

Even where, as here, a district court finds that a defendant has established "extraordinary and compelling reasons," the district court "is still not required to grant the defendant's motion for a sentence reduction. Rather, it must 'consider' the § 3553(a) sentencing factors 'to the extent that they are applicable' in deciding whether to exercise its discretion to reduce the defendant's term of imprisonment." *United States v. High*, 997 F.3d 181, 186 (4th Cir. 2021) (quoting 18

U.S.C. § 3582(c)(1)(A)) (cleaned up); *see also United States v. Hargrove*, 30 F.4th 189, 195 (4th Cir. 2022) (noting that, even if a prisoner establishes "extraordinary and compelling circumstances," a district court is "not required to grant the defendant's motion for a sentence reduction."). Here, the Court concludes that, based on Allen's violent conduct, his criminal history, and his continued disciplinary infractions, the § 3553(a) factors weigh against granting his request for relief.[6]

The Court will first address Allen's arguments regarding his youth at the time of his federal offenses, noting that he was 23 years old when he committed the robberies at issue here. ECF No. 288 at 4–5. These arguments go to § 3553(a)(1), which asks the Court to consider "the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1). Specifically, Allen asks the Court to consider both his "youth at the time of the time of the commission of his offense" and other cases where other courts "have granted adolescent offenders [a] reduction of sentence, based on their age [.]" *Id.* at 4.

The Court is not persuaded by Allen's argument and concludes that § 3553(a)(1) weighs against a reduction in his sentence. First, the Court notes that Allen was not an "adolescent" at the time of the instant offense conduct. "Adolescence" is defined as "the period from puberty to maturity terminating at the age of majority". *See Adolescence*, *Merriam-Webster Dictionary*, (11th ed. 2003). The age of majority in South Carolina is 18 years old. *See* S.C. Code Ann. § 15–3–40(1); *see also Age of Majority*, Black's Law Dictionary (11th ed. 2019) ("The age

---

[6] The Court has balanced those factors given the compassionate release issues not in play at the original sentencing. *Kibble* at 335 (Gregory, C.J., concurring).

defined by statute as 18 years, at which a person attains full legal rights [.]"). Here, Allen was clearly not an adolescent since, as stated, at 23, he was well beyond the age of majority.

Second, any argument as to Allen's youth being a basis for a reduction in his sentence is rebutted by the significant criminal record Allen accumulated before committing the instant federal offense. First, in January 2000, at the age of 19, Allen was charged with use of a vehicle without permission. PSR ¶ 24. According to the PSR, Allen was stopped by officers of the Florence Police Department and found to be in possession of a stolen 1986 GMC Safari van. *Id.* He was convicted of this offense in September 2000 and received a one-year sentence. *Id.*

Despite this arrest and pending-sentence, Allen continued to engage in criminal conduct while awaiting sentencing on the stolen vehicle charge. In December 1999, Allen, now age 20, was charged in South Carolina state court with (1) hit and run accident with property damage, (2) driving under suspension, and (3) possession of marijuana. PSR ¶ 25. These charges arose out of a motor vehicle accident where, after colliding with another vehicle, Allen failed to stop his vehicle or remain at the scene. *Id.* He was later arrested and remained in custody. *Id.* He was convicted of these charges in April 2000, and received a 1-year prison sentence suspended to 4 months, followed by 6 months' probation. *Id.* As sentencing, Allen was given credit for time served and began his probation. *Id.*

After his release on this conviction, and while awaiting sentencing on the stolen vehicle charge, Allen—now on state probation—engaged in further criminal

conduct. In July 2000, Allen was arrested and convicted of trespassing and resisting arrest. *Id.* ¶ 26. For these convictions, he received a 30-day sentence on each count. *Id.* Thereafter, in September 2000, Allen received a one-year sentence on the stolen vehicle charge. *Id.* ¶ 24. He was released from the South Carolina Department of Corrections in January 2021. *Id.*

Despite receiving three prison sentences during a single year, Allen was again not deterred from committing further *escalating*, violent criminal conduct. Approximately a year after his January 2021 release on the stolen vehicle conviction, Allen and his codefendants committed the two violent armed robberies giving rise to the instant federal charges. Based on his prior criminal conduct, and considering the violent offense conduct committed, the Court is unpersuaded by Allen's argument that his purported youth at the time of the commission of the two violent armed robberies is a basis for a reduction in his sentence. This conclusion is supported by Allen's prior failure to abide by the terms of his probation and his willingness to commit escalating, violent conduct despite serving repeated prison sentences shows a distinct lack of respect for the law. Accordingly, for the reasons stated, the Court concludes that § 3553(a)(1) weighs against a reduction in Allen's sentence.

When weighing the § 3553(a) factors, it is appropriate to next review the facts surrounding Allen's instant offenses. That conduct is discussed in significant detail in Paragraphs 10–17 of the PSR, which the Court incorporates by reference. While this order previously set forth that conduct, the Court will highlight the relevant

portions again here. As noted, Allen committed two violent armed robberies. During each robbery, Allen and his codefendant both possessed and brandished firearms to commit violent crime, including an illegal sawed-off. Allen threatened to kill clerks during both robberies. Specifically, the clerk in the first robbery was told that "they would blow him away if he pushed the button" triggering the store's alarm. *Id.* ¶ 11. During the second robbery, Allen threatened the clerk to "give me the rest or I'll kill you." *Id.* ¶ 13. After a review of the facts of the instant offenses, the Court concludes that "the nature and circumstances of the offense" weigh heavily against a reduction in Allen's sentence. *Contra Brown*, 2023 WL 5257673 at *7 ("While we do not make light of the serious conduct for which Brown was convicted, we cannot ignore the extraordinary fact that Brown . . . was not charged with causing any physical violence or injury"). Allen clearly committed violent crime and threatened his victims with physical harm and death. The conduct outlined makes it clear that Allen would pose a great risk to the public if the Court were to reduce his sentence.

The Court also concludes that §§ 3553(a)(2)(A)-(C) weigh against release for similar reasons. The circumstances of the instant offenses and Allen's prior criminal history demonstrate his propensity to engage in repeated criminal conduct and commit acts of violence. His actions also demonstrate a distinct disrespect for both the law and the safety of others. As outlined above, Allen's conduct during the two armed robberies was egregious and violent. The sentence imposed was—and is— necessary to (1) reflect the seriousness of the offense, (2) promote respect for the law, (3) provide just punishment, and (4) to afford adequate deterrence.

The Court next turns to §§ 3553(a)(3)-(6), which analyzes the kinds of sentences available, the guidelines sentencing range, any applicable policy statements, and the need to avoid sentencing disparity. In considering these factors, the Court gives great weight to the parties' plea negotiations and the resulting plea agreement. *See United States v. Bond*, 56 F.4th 381, 384 (4th Cir.), *cert. denied*, 143 S. Ct. 2596 (2023) noting that "[i]n its order denying compassionate release, the district court balanced the benefit of the plea agreement against the stacked minimum sentence for all charged counts, concluding the sentence remained a fair punishment for [the defendant's] conduct.").

Here, Allen was named in five of six counts in the Indictment. ECF No. 1. The Government sought a long sentence against him based on his crimes. To accomplish imposing this sentence, the Government entered a plea agreement with Allen. ECF No. 91. In exchange for his plea, the Government agreed to drop three of five counts charging serious offenses as memorialized in the parties' plea agreement: Counts 1 and 4, charging Allen with Hobbs Act robbery, and Count 6, charging him with being a felon in possession. *Id.*

The Government had the option to seek convictions on the three dropped counts, which would have resulted in a much higher sentence. However, the Government made a plea offer to Allen as memorialized in the parties' plea agreement. At that time–nearly 21 years ago—when negotiating the plea agreement, the Government was fully aware of the *then-existing* sentencing regime, whereby Allen would receive a statutory minimum 35-year sentence. *See United*

*States v. Ford*, No. CR 0:14-362-JFA, 2021 WL 4555730, at *10 (D.S.C. Oct. 5, 2021) (noting that the plea-bargaining process "may well be the reason that Congress expressly stated that the anti-stacking provision of the First Step Act was not retroactive. A retroactive application upsets settled bargains from years ago that were made in good faith."). Accordingly, Allen pled guilty to two counts of using, carrying, and possessing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c), specifically a short-barreled shotgun. He pled guilty knowing those two counts carried a statutory minimum sentence of 35 years (10-year statutory minimum on Count 2, with 25 years consecutive on Count 4). He was also well-aware that three serious charges were dismissed in exchange for his plea. Again, while he was sentenced to 350 months, his sentence would have been much longer had serious charges not been dismissed.

Regarding Allen's plea agreement, the Court notes that he received an additional opportunity for a reduction at sentencing, pursuant to the terms of the parties' plea agreement. Paragraph 10 of the plea agreement states:

> Provided the Defendant, Tyrone Allen, cooperates pursuant to the provisions of this plea agreement, and his cooperation is deemed by Attorney for the Government as providing substantial assistance . . . the Attorneys for the Government agree to move the Court to depart from the United States Sentencing Commission Guidelines, pursuant to § 5K1.1 . . . for reduction of sentence [.]

ECF No. 91 at ¶ 10. In accordance with this provision, and based on Allen's substantial assistance, the Government filed a § 5K1.1 motion for a downward departure. ECF No. 123. The Court granted this motion and reduced Allen's sentence on his second § 924(c) conviction from the statutory minimum mandatory

sentence of 300 months to 230 months—a reduction of nearly six years. ECF Nos. 125 & 128.

While Allen would face a lower starting mandatory minimum on his second § 924(c) today, he could still receive the 350-month sentence originally imposed if sentenced today. Today, on both § 924(c) convictions, he would face a mandatory *minimum* of 120 months consecutive for a total sentence of 240 months.[7] However, as stated earlier, the 120-month mandatory minimum on each of these counts is *only the minimum*. Allen could be sentenced up to a statutory *maximum* of Life on either § 924(c) conviction. Thus, if sentenced today, Allen could still receive the original 350-month sentence imposed despite now facing a lower statutory minimum on his second § 924(c) conviction.

Again, the Court acknowledges that the First Step Act eliminated the "stacking" of sentences pursuant to § 924(c). As a result, if Allen pled to the same two charges today, he would be subject to a lower mandatory minimum on the second § 924(c) count. However, this alone is not a basis to reduce his sentence. Considering Allen's prior record and the continued violence in connection with the federal offenses, the 20-year mandatory minimum sentence he would face on the same two § 924(c) counts today would be inadequate. It is reasonable to conclude the Government would seek a sentence commensurate with the 350-month sentence imposed in Allen's case, if he were being sentenced today. Serious charges were

---

[7] This is because the two § 924(c) counts he pled to related to his possession of a short-barreled shotgun, which is treated differently under § 924(c). *See* § 924(c)(1)(B)(i) ("If the firearm possessed by a person convicted of a violation of this subsection—is a . . . short-barreled shotgun . . . the person shall be sentenced to a term of imprisonment of not less than 10 years [.]").

dropped when Allen received his 350-month sentence. Those charges may well not be dropped if Allen were charged today.

Thus, when considering the instant offense conduct and Allen's previously noted prior convictions, there is a limited basis to conclude that a lesser or significantly lower sentence would be imposed today. Moreover, the Court declines, for the reasons stated, to disturb the results of the parties' carefully crafted plea agreement because it reflects a "respect for the law" and reducing Allen's sentence below the initial sentence imposed would not be "just punishment for his crimes." *Bond*, 56 F.4th at 384–85 ("We agree with the district court that (1) considering the plea agreement in this context reflected a 'respect for the law' and (2) reducing [the Defendant's] sentence so far below the initial Guidelines range wouldn't be 'just punishment' for [his] crimes."). Accordingly, the Court concludes that §§ 3553(a)(3)-(6) do not weigh in favor of a reduction in Allen's sentence.

As to the remaining factors, the Court acknowledges that the record reflects that Allen has made some rehabilitative efforts while incarcerated. However, Allen's inmate discipline date reveals extensive disciplinary issues while incarcerated. ECF No. 290–2. Specifically, he has received 19 infractions while incarcerated: (1) possessing a hazardous tool in 2022, (2) interfering with security devices in 2020, (3) possessing a hazardous tool in 2019, (4) refusing to obey an order in 2019, (5) possessing drugs/alcohol in 2019, (6) use of drugs/alcohol in 2018, (7) possessing drugs/alcohol in 2017, (8) fighting with another person in 2017, (9) stealing in 2015, (10) use of drugs/alcohol in 2014, (11) use of drugs/alcohol in 2014,

(12) possessing intoxicants in 2010, (13) being insolent to a staff member in 2010, (14) possessing intoxicants in 2010, (15) possessing intoxicants in 2009, (16) being absent from assignment in 2007, (17) failing to stand count in 2006, (18) being absent from assignment in 2005, and (19) possessing an unauthorized item in 2005. *Id.* The Court concludes that this extensive disciplinary history also weighs against release and shows a continuing disrespect for the law. In sum, Allen committed serious, violent crimes, both the instant offenses and in the past, and has continued to have disciplinary issues while incarcerated. His rehabilitative efforts do not outweigh the repetitive violence and contempt for the law that he exhibited before—and now during—his incarceration.

Finally, as noted in *McCoy*, the Fourth Circuit indicated that district courts should not grant release based solely on the First Step Act's change to § 924(c) but should instead "conduct individualized inquires" and consider individual factors specific to each defendant. 981 F.3d at 288. Here, the Court has followed that guidance and has based its decision on the individualized considerations outlined herein. The offense conduct at issue is very serious. Allen participated in two violent armed robberies where he and his co-defendants brandished illegal firearms and threatened to kill store clerks. Allen's conduct was egregious, serious, and significant. When coupled with his prior criminal history and his disciplinary record while incarcerated, it demonstrates Allen disregard for both the safety of others and the law. Based on the above analysis, the Court finds that the § 3553(a) factors weigh against Allen's request for relief and concludes Allen would pose a risk to the

public's safety if released. Accordingly, the Court concludes a sentence reduction is not appropriate.

## **CONCLUSION**

The Court finds that Allen's motion for compassionate release should be denied, for the reasons stated and based on an analysis and balancing of the 3553(a) factors because, if released, he would pose a significant risk to the public. Accordingly, it is the judgment of the Court that Allen's motion for compassionate release, ECF No. 288, is **DENIED**.

**IT IS SO ORDERED.**

_s/ Terry L. Wooten_____
Terry L. Wooten
Senior United States District Judge

September 25, 2023
Columbia, South Carolina